DECISION
Relator, Tammy K. Moran, has filed an original action in mandamus requesting this court to issue a writ of mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's application for temporary total disability compensation and to enter a new order that grants said compensation, or, in the alternative, that complies with applicable law.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.)
Respondent-employer, The Penn Traffic Company filed an objection to the decision of the magistrate. Respondent-commission also filed objections to the decision. The gist of the objections is that the magistrate erred in her conclusions of law that the commission had abused its discretion in its failure to list the January 2000 C-84 of Dr. Schottenstein as required under State ex re. Fultz v. Indus. Comm. (1994), 69 Ohio St.3d 327. We are in agreement with the objections, finding that the commission is not required to list all of the evidence considered, only the evidence relied upon in reaching a decision to grant or deny compensation. See State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. Because the commission properly listed the evidence upon which it relied in its determination and did not catalogue the evidence it considered, Fultz was not implicated.
Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and we adopt those findings of fact as our own. This court sustains respondents' objections to the decision of the magistrate and rejects her conclusion of law, finding instead that relator has failed to demonstrate that respondent-commission had abused its discretion. In accordance with that conclusion, the requested writ is denied.
Objections sustained; Writ of mandamus denied.
BOWMAN HARSHA, JJ., concur.
HARSHA, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.
 APPENDIX A IN MANDAMUS
Relator, Tammy K. Moran, filed this original action asking the court to compel respondent Industrial Commission of Ohio ("commission") to vacate its September 2001 order denying compensation for temporary total disability ("TTD") and to issue an order that grants compensation or, in the alternative, an order that complies with applicable law.
Findings of Fact:
1. In December 1996, Tammy K. Moran ("claimant") sustained an industrial injury, and her workers' compensation claim was allowed for cervical sprain/strain and bruises to the face, neck and scalp. She returned to work after a few days but experienced increasing symptoms, and a period of TTD commenced in March 1997.
2. TTD continued due to the neck injury, as to which claimant reported ongoing pain and headaches.
3. In March 1999, claimant consulted a psychologist, Donald Tosi, Ph.D., who noted that claimant had been receiving medication for anxiety and depression for one and one-half years. He opined that claimant needed psychological therapy.
4. In August 1999, the commission allowed the claim for "major depressive disorder, moderate, single episode without psychotic features." The commission stated that TTD was not at issue for the episode because TTD was already being paid based on the allowed physical conditions.
5. On November 17, 1999, a district hearing officer found that the allowed physical conditions had reached maximum medical improvement ("MMI") and terminated TTD compensation as of the date of the hearing. Claimant appealed.
6. On December 13, 1999, a C-84 form was submitted by a psychiatrist, Michael Schottenstein, M.D., certifying TTD from December 1996 to the present based on chronic pain, migraines, and major depression. He stated that medication management "may" provide improvement. When asked to estimate a return-to-work date, he left the space blank and stated that return to work was "unknown."
7. On December 17, 1999, a staff hearing officer affirmed. In regard to the C-84 submitted by Dr. Schottenstein, the staff hearing officer found that it could not serve as a basis to award TTD compensation for several reasons. First, there was no documentation on file regarding when Dr. Schottenstein began treating claimant. In addition, the report "does not include the necessary estimated return to work date." The order stated, however, that TTD would be payable upon submission of "appropriate medical evidence." The employer appealed.
8. On January 10, 2000, Dr. Schottenstein completed another C-84 form, stating a return-to-work date of January 10, 2001, and stating that medication management "may" provide relief.
9. In February 2000, the commissioners affirmed that the physical conditions had reached MMI. In regard to whether TTD could be based on the newly allowed psychological condition, the commission noted that Dr. Schottenstein relied in part on a nonallowed condition and on conditions that had reached MMI. The commission denied TTD.
10. On July 21, 2000, Dr. Schottenstein provided a narrative report. He stated that the chronic pain and headaches had not responded to treatment and that claimant "remains" depressed. He opined she appeared to have "partial" benefit from medication but was disabled from working.
11. Claimant filed a motion for TTD commencing in November 1999. She also asked that the claim be allowed for migraine headaches and chronic pain syndrome.
12. In November 2000, Gladstone C. McDowell, II, M.D., reported that claimant had cervical degenerative disc disease with displacement and radiculopathy, which had not responded to steroid injections. He noted: "She does have what I suspect to be mechanical referred pain from the cervical facet region, but interestingly enough she has no pain or restriction with cervical extension." He proposed a CT scan to determine progression of the disc disease, and opined that, if the CT scan was negative, a series of diagnostic/therapeutic cervical facet blocks could be done, which, if effective, could be followed by radiofrequency denervation for pain control.
13. On March 7, 2001, William J. Morris, M.D., provided a narrative report stating that claimant suffered from chronic headaches, neck pain, right shoulder pain, and right arm pain. He opined that claimant was disabled by this pain.
14. On March 11, 2001, Dr. Schottenstein wrote a report stating that claimant was "disabled." He explained that the migraines had not responded to treatment and that claimant "remains" depressed. He noted that her chronic pain was refractory to treatment. He described in detail the psychological impairment that prevented her from working or performing activities of daily living. He gave no indication of a chance for improvement, explaining that, although there had been partial benefit from medication in the past, the improvement had been "mild" as is often the case with patients who have chronic pain that is refractory to treatment.
15. In June 2001, a district hearing officer ruled as follows:
"* * * [T]his claim is additionally allowed for the conditions of `chronic pain syndrome" and "migraine headaches[.]' * * *
"The claimant's request for temporary total disability compensation is denied. The claimant's treating physician, Dr. Schottenstein, states in his 07/21/2000 and 03/11/2001 reports that the claimant is `disabled' but his reports do not persuasively establish that the new allowed conditions or the claimant's major depression are temporary in nature.
"Dr. Schottenstein does not indicate what current treatment alternatives are being considered. In fact, in both the 07/21/2000 and 03/11/2001 reports Dr. Schottenstein states that the claimant's migraines and chronic pain are refractory to treatment.
"Further, Dr. Schottenstein has not provided specific disability dates in any of his reports. He also completed a C-84 on 12/13/1999 which is insufficient evidence upon which to pay temporary total compensation since it does not give an estimated return to work date.
"In sum, the District Hearing Officer finds that the evidence attached to the claimant's C-86 from Dr. Schottenstein and Dr. Morris, and otherwise on file, does not adequately support payment of temporary total compensation. It does not persuasively establish that the claimant's condition is temporary or over what dates it may have been temporary."
16. In August 2001, a staff hearing officer affirmed the additionally allowed conditions and the denial of TTD:
"Claimant's request for temporary total disability compensation remains denied. The Staff Hearing Officer finds that while the evidence of record supports the conclusion that the claimant is not able to return to her former position of employment, the same evidence does not support the conclusion that the disability is temporary in nature. The C-84 submitted by Dr. Schottenstein gives no estimated return to work date. The reports of Dr. Schottenstein, particularly the report of 07/21/2000 and 03/11/2001, state that the claimant's migraine headaches and the chronic pain are refractory to treatment. The statements in the same reports that the claimant is disabled do not support the claimant's obligation of demonstrating a temporary and total disability. Additionally, as pointed out by the District Hearing Officer, there is no indication that any physician is considering a course of treatment which varies from the course of treatment which the claimant has been undergoing from some time, and which would indicate anything [other than] that the claimant's disability is static."
Conclusions of Law:
The issue before the court is whether the commission had a legal duty to award the requested period of TTD compensation. As explained more fully below, the magistrate concludes that, although the orders reveal no abuse of discretion in applying the law to the evidence considered, the language of the orders indicates that the hearing officers were unaware of the C-84 submitted by Dr. Schottenstein in January 2000. Accordingly, a limited writ is warranted to return this matter to the commission for further consideration.
In the present action, claimant requested an award of TTD compensation. Thus, the burden rested on claimant to prove that the disability was both total and temporary, and to prove a causal relationship between the disability and the allowed condition. State ex rel. Chrysler Corp. v. Indus. Comm. (1998),81 Ohio St.3d 158; State ex rel. Pleban v. Indus. Comm. (1997), 78 Ohio St.3d 406.
Ordinarily, the commission cites the evidence on which it relied, and the court cannot disturb a finding that is based on some evidence in the record. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165. However, when a claimant submits evidence that is unopposed by other evidence, that does not mean that the commission must automatically grant the requested compensation. The commission is entitled to scrutinize the evidence and decide whether it is reliable. The commission has sole discretion to evaluate the evidence and determine its persuasiveness. Id.; State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575.
When the commission cites the evidence it finds persuasive, it has no duty to identify evidence it rejected or to explain why it rejected one opinion in favor of another. E.g., Bell, supra. However, when the commission rejects uncontroverted evidence, it must explain why that evidence was unpersuasive. E.g., State ex rel. Stewart v. Columbus Schools (2001), Franklin App. No. 01AP-80 (Magistrate's Decision), adopted (2001).
In determining whether a condition is temporary for purposes of TTD under R.C. 4123.56(A), the commission focuses on whether treatment is expected to produce fundamental functional improvement. A condition is permanent, not temporary, when it will "with reasonable probability, continue for an indefinite period of time without any present indication of recovery therefrom." State ex rel. Miller v. Indus. Comm. (1988),36 Ohio St.3d 58. In Ohio Adm. Code 4121-3-32(A)(1), MMI is defined as:
"* * * [A] treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function." This provision makes clear that, even when there is ongoing medical treatment, the disability may be permanent. That is, medical treatments may continue to be necessary even after a condition has reached MMI. When a condition has reached a static situation where no fundamental improvement is expected, the claimant is not "temporary" and the claimant cannot receive TTD compensation, regardless of whether the disability is severe and regardless of whether treatment continues. See, generally, State ex rel. Copeland Corp. v. Indus. Comm. (1990), 53 Ohio St.3d 238, 239; State ex rel. Miller v. Indus. Comm. (1994), 71 Ohio St.3d 229, 232; State ex rel. Overlow v. Indus. Comm. (1998), Franklin App. No. 97AP-414, appeal dismissed (1998),83 Ohio St.3d 1405; State ex rel. Evans v. Indus. Comm. (1999), Franklin App. No. 97AP-958.
In the present action, the commission accepted the medical opinion that the additionally allowed conditions were disabling. That is, the commission accepted that claimant could not return to her former position of employment. However, it found that claimant did not demonstrate that her disability was temporary in nature. The commission stated that there was no medical evidence indicating that the disability from the allowed conditions was anything other than static, and the magistrate concludes that this assessment of the evidence was within its discretion, to the extent of the evidence it explicitly considered.
The commission was within its discretion to conclude that Dr. Schottenstein's narrative reports of July 2000 and March 2001 indicate that the newly allowed conditions were not responding to treatment and that the disability had reached MMI. His comments suggest that no fundamental change had occurred and claimant's condition remained essentially unchanged from summer 2000 to spring 2001. The narrative reports focus on the severity of the impairment, giving no hope for improvement. Dr. Schottenstein indicated that, as long as the chronic pain did not mitigate, the depression and other allowed conditions were unlikely to improve, and he further noted that the chronic pain and migraines had not responded to treatment.
Although Dr. McDowell proposed measures for pain control, he was uncertain of the etiology of the symptoms and did not relate them unequivocally to the allowed conditions. Thus, his report does not support a finding that the allowed conditions were temporary in nature.
Further, the commission explained why it did not find the C-84 filed in December 1999 to be persuasive as to the element of temporariness. The commission indicated that the psychiatrist's C-84 certification was at odds with his comments in his narrative reports. The magistrate concludes that the text of the narrative reports could be viewed by a reasonable finder of fact as indicating that fundamental improvement had not occurred and was not expected to occur. The narrative reports could reasonably be viewed as establishing that there was no present indication of recovery from the allowed conditions. In addition, the magistrate notes that, in his C-84 of December 1999, Dr. Schottenstein certified TTD from December 1996 to the present, including periods of time in 1996 and 1997 during which claimant had returned to her job. Thus, the commission was within its discretion to rely on the narrative reports rather than the C-84 filed in December 1999. That is, the commission was not required to accept the conclusory opinion in the C-84 in light of the explanatory comments in the narrative reports.
In addition, to the extent that Dr. Schottenstein's narrative description of mild improvement might have supported an award of TTD for some period of time, Dr. Schottenstein would still have to establish the specific dates during which that temporary disability persisted relative to the mild improvement. Further, based on the administrative definition of MMI, it is subject to interpretation as to whether a vague reference to mild improvement would suffice to support TTD.
However, in both orders, the commission gave no indication it was aware of the C-84 filed in January 2000. The commission consistently referred to Dr. Schottenstein's C-84 in the singular, although there were two C-84 reports. Because the text of the orders indicates that the commission inadvertently overlooked a crucial item of evidence, a limited writ is warranted. See, generally, State ex rel. Fultz v. Indus. Comm. (1994), 69 Ohio St.3d 327.
Because the commission has not yet addressed the question of whether the January 2000 report was credible evidence of TTD, the magistrate declines to address the evidentiary value of the latter C-84. That report may or may not be subject to all the same weaknesses as the earlier C-84 report. It may or may not be viewed as adequately correcting inadequacies in the December 1999 report. There is no date stamp on the copy filed with this court, and it may be that the report was not on file at the time of the hearings. These are questions for the commission.
Accordingly, the magistrate recommends a limited writ, returning this matter to the commission to vacate the order of its staff hearing officer, to give further consideration to the evidence, and to issue a new order granting or denying TTD.